UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | |
|---|---|
| **Bobby H. Schiff and Mark Fisher,**<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**James Ward Jr., Dane D. Koller,**<br>**and Edwin E. Castillo,**<br><br>　　　　　　　　　　Defendants. | CASE NO. _____ |

## Original Complaint

Plaintiffs Bobby H. Schiff and Mark Fisher file this Original Complaint against Defendants James Ward Jr., Dane Koller, and Edwin E. Castillo.

### I. Parties

1. Plaintiff Bobby H. Schiff is an individual and a citizen of the state of Texas.

2. Plaintiff Mark Fisher is an individual and a citizen of the state of Texas.

3. Defendant James Ward Jr. is an individual and a citizen of one or more of the states of Arkansas and Alabama, and may be served with process at one or more of 4702 SW Blairemont Rd., Bentonville, AR 72713 and 3687 Olde Park Rd., Gulf Shores, AL 36542.

4. Defendant Dane D. Koller is an individual and a citizen of the state of Florida, and may be served with process at 2242 Fairglenn Way, Winter Park, FL 32792.

5. Defendant Edwin E. Castillo is an individual and a citizen of the state of California, and may be served with process at 4931 Maine Ave., Baldwin Park, CA 91706.

### II. Jurisdiction & Venue

6. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 as this case concerns a federal question. The requirements of Section 1331 are met because Plaintiffs'

allegations arise of out Defendants' false advertisement, which was conduct that violated the Lantham Act (15 U.S.C. § 1125).

7.  The Court also has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs but including reasonable attorney's fees.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### III. Background Facts

9.  In January 2020, Defendants solicited Plaintiffs to invest bitcoin in Global Credits Network ("GCN"), which purports to finance sports wagers based on recommendations from professional handicappers with proven track records and insider tips.

10.  Specifically, Defendants Koller and Castillo represented to Plaintiffs that if they structured their bitcoin investment in GCN in a particular way, they would double the value of their initial investment and receive daily distributions of bitcoin.

11.  Plaintiffs were instructed to make a ₿1 "primary" investment coupled with two ₿0.25 "binary" investments, and were told their accounts were credited with an additional ₿1.5 "signup bonus." Defendant Koller shared screen shots showing the purportedly guaranteed distributions from GCN to his personal bitcoin wallet.

12.  In early February 2020, at Defendant Castillo's direction, Plaintiffs paid cash for Castillo to exchange to bitcoin at an 8% premium over market value to fund their investment in GCN.

13. Defendants promised Plaintiffs they would receive a daily distribution of at least 0.25% to 2.05% based on their investment value. Koller specifically represented that Plaintiffs would receive these guaranteed distributions without having to solicit additional investors in GCN.

14. Plaintiffs' accounts were credited with about a half-dozen distributions in inconsistent amounts, but these distributions stopped abruptly in late February 2020. Plaintiffs were told GCN's system had "programming issues," which Defendant Ward, GCN's founder and CEO, represented he was working to resolve.

15. In September 2020, Ward claimed that GCN's programming issues had been resolved, but under the new "program," Plaintiffs could only receive distributions after successfully soliciting others to invest in GCN as well. Because this new "program" ran contrary to Plaintiffs' expectations regarding their investments in GCN, Plaintiffs requested the return of their bitcoin. Ward told Plaintiffs that "refunds will not happen under any circumstances."

16. In fact, Ward has been operating GCN as an illegal pyramid scheme, in which Defendants Koller and Castillo have actively participated by soliciting Plaintiffs and others for their own financial benefit. Prior to December 2019, GCN operated as "Sports Trading BTC," which appears to have changed its name to GCN to avoid negative association with Sports Trading BTC as a known fraudulent scheme. Ward has a deep history of running failed multi-level marketing schemes including LGN Prosperity (rebranded LGN International), iBizWave, 2SL Start Living, and Pangea.

17. At this point, Plaintiffs have no reason to believe GCN actually has relationships with experienced professional sports handicappers who direct GCN's operations. Plaintiffs

now know that the representations regarding startup bonuses and guaranteed distributions—a passive investment opportunity—were patently false. These investment opportunities were never registered as securities with either the SEC or the Texas State Securities Board, and no exemption to registration applies.

18. What happened to Plaintiffs is typical in pyramid schemes. When new investments dry up, payments stop, and investors are told they can only get paid if they solicit new investors. Plaintiffs were induced to join GCN with the explicit promise that they would not need to recruit other investors to receive guaranteed distributions, and this representation was false. Ward continues to hold Plaintiffs' initial bitcoin investment hostage as its value continues to soar, and Plaintiffs have been deprived of this and the other benefits they were promised for investing in GCN.

## IV. Causes of Action

*A. Claim 1: Sale of Unregistered Securities*
*(Violation of Texas Securities Act § 33A(1))*

19. Plaintiffs fully incorporate by reference the allegations in both the preceding and succeeding paragraphs of this Original Complaint.

20. "A person who offers or sells a security in violation of Section 7 [or] 12 . . . of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security." TEX. REV. CIV. STAT. ART. 581-33A(1).

21. Section 7 of the Texas Securities Act prohibits the sale of unregistered securities. *Id.* § 7A(1). The definition of "securities" includes any "investment contract," such as the interests in GCN sold by Defendants to Plaintiffs for ₿1.5. *Id.* § 4A. Defendants solicited

Plaintiffs to purchase the securities through communications directed to Plaintiffs in the Northern District of Texas.

22. The securities sold by Defendants to Plaintiffs were not registered with either the Securities and Exchange Commission or the Texas State Securities Board at the time they were sold to Plaintiffs, and the securities were not exempt from registration.

23. Section 12 of the Texas Securities Act prohibits the sale of securities by unregistered persons. *Id.* § 12. Defendants were not registered dealers at the time they solicited Plaintiffs to invest ฿1.5 in GCN.

24. In soliciting Plaintiffs to purchase the securities, Defendants were motivated by their own financial interest. Ward financially benefitted from the sale as the founder and CEO of GCN, exercising control over Plaintiffs' investments. Koller and Castillo financially benefitted from receiving commissions in consideration for soliciting additional investors.

25. Plaintiffs seek rescission of their investment in GCN, including the ฿1.5 they paid plus interest, costs, and reasonable attorney's fees as equitable in the circumstances. *Id.* § 33D.

> *B. Claim 2: Securities Fraud*
> *(Violation of Texas Securities Act § 33A(2))*

26. Plaintiffs fully incorporate by reference the allegations in both the preceding and succeeding paragraphs of this Original Complaint.

27. Section 33A(2) of the Texas Securities Act provides:

> A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in

equity for rescission, or for damages if the buyer no longer owns the security.

Tex. Rev. Civ. Stat. art. 581-33.

28. Defendants solicited Plaintiffs to invest in GCN by means of the following untrue statements of material fact or omissions:

a. During January and February 2020, Defendants Koller and Castillo falsely represented to Plaintiffs via email, internet, and cell phone communications that if they structured their investment in GCN as one ₿1 "primary" and two ₿0.25 "binary" investments, they would double the value of their initial investment, receive a ₿1.5 "signup bonus," and receive guaranteed daily distributions of at least 0.25% to 2.05%, without Plaintiffs having to solicit additional investors in GCN. These representations were knowingly false at the time they were made. Defendants Koller and Castillo knew that distributions from GCN depended on soliciting new investors because GCN operated as a pyramid scheme, and Plaintiffs could never have received a return on their investment from GCN's operation. Plaintiffs have never had access to either their ₿1.5 principal investment or the promised returns. These misrepresentations originated from Defendant Ward and were repeated by Defendants Koller and Castillo.

b. After freezing distributions in late February 2020, Defendant Ward represented to Plaintiffs via internet communications that GCN's system had "programming issues." In September 2020, Ward claimed via internet communications that the issues were resolved, but under the new "program," Plaintiffs could only receive distributions after successfully soliciting others to invest in GCN as well. These representations were knowingly false at the time they were made. Because Ward

operates GCN as a pyramid scheme, distributions to Plaintiffs were always dependent upon soliciting additional victims of the scheme—something Plaintiffs were told they did not have to do.

29. In soliciting Plaintiffs to purchase the securities, Defendants were motivated by their own financial interest. Ward financially benefitted from the sale as the founder and CEO of GCN, exercising control over Plaintiffs' investments. Koller and Castillo financially benefitted from receiving commissions in consideration for soliciting additional investors.

30. Plaintiffs seek rescission of their investment in GCN, including the Ƀ1.5 they paid plus interest, costs, and reasonable attorney's fees as equitable in the circumstances. *Id.* § 33D.

*C. Claim 3: False Advertising*
*(Violation of the Lanham Act, 15 U.S.C. § 1125)*

31. Plaintiffs fully incorporate by reference the allegations in both the preceding and succeeding paragraphs of this Original Complaint.

32. Defendants have violated Section 43 of the Lanham Act, which prohibits false advertising. 15 U.S.C. § 1125.

33. Defendants have engaged in false advertising by, in connection with commercial advertising or promotion of GCN's services, using in commerce words, terms, false or misleading descriptions of fact, or misleading representations of fact, which misrepresent the nature, characteristics, or qualities of GCN's services. Specifically, among other things:

  a. During January and February 2020, Defendants Koller and Castillo falsely represented to Plaintiffs via email, internet, and cell phone communications that if they structured their investment in GCN as one Ƀ1 "primary" and two Ƀ0.25 "binary" investments, they would double the value of their initial investment, receive

a ฿1.5 "signup bonus," and receive guaranteed daily distributions of at least 0.25% to 2.05%, without Plaintiffs having to solicit additional investors in GCN. These representations were knowingly false at the time they were made. Defendants Koller and Castillo knew that distributions from GCN depended on soliciting new investors because GCN operated as a pyramid scheme, and Plaintiffs could never have received a return on their investment from GCN's operation. Plaintiffs have never had access to either their ฿1.5 principal investment or the promised returns. These misrepresentations originated from Defendant Ward and were repeated by Defendants Koller and Castillo.

 b. After freezing distributions in late February 2020, Defendant Ward represented to Plaintiffs via internet communications that GCN's system had "programming issues." In September 2020, Ward claimed via internet communications that the issues were resolved, but under the new "program," Plaintiffs could only receive distributions after successfully soliciting others to invest in GCN as well. These representations were knowingly false at the time they were made. Because Ward operates GCN as a pyramid scheme, distributions to Plaintiffs were always dependent upon soliciting additional victims of the scheme—something Plaintiffs were told they did not have to do.

34. Defendants used false advertising to advertise or promote GCN's services to consumers nationwide, and Defendants specifically and intentionally targeted and solicited Plaintiffs and other consumers in the Northern District of Texas. Defendants have intentionally directed the same or similar false or misleading representations of fact described above toward consumers in the Northern District of Texas.

35. Defendants' representations about GCN's services were literally false or likely to mislead consumers, as described above. Specifically, these statements actually deceived or had the capacity to deceive a substantial segment of potential consumers because consumers would not likely have bought—and Plaintiffs would not have bought—services from GCN if they were not misled by misstatements about GCN's services, and knew accurate information regarding GCN's services. A substantial segment of potential consumers would likely be influenced—and Plaintiffs were influenced—by Defendants' misrepresentations about GCN's services because consumers would care whether they needed to solicit additional people to buy into GCN in order to receive distributions from GCN. These representations therefore constitute material deception likely to influence consumer purchasing decisions.

36. Plaintiffs have been commercially damaged and injured as a direct and proximate result of Defendants' false advertising.

Plaintiffs seek recovery for violation of rights pursuant to 15 U.S.C. § 1117(a) for Defendants' willful violation of the Lanham Act, specifically including Defendants' profits, Plaintiffs' damages, the costs of bringing this lawsuit, exemplary damages above the amount found as actual damages, and reasonable attorney's fees.

### V. Jury Demand

37. Plaintiffs demand a trial by jury on all issues triable by a jury.

### VI. Conclusion

For these reasons, Plaintiffs respectfully requests that the Court enter judgment in its favor, award Plaintiffs their reasonable costs and fees, and grant such other and such further relief to which they may show themselves entitled.

Date: May 17, 2021                    Respectfully submitted,

/s/ _____
Alex More (amore@ccsb.com)
Bar No. 24065789
Jason M. Katz (jkatz@ccsb.com)
Bar No. 24038990
Dorlin Armijo (darmijo@ccsb.com)
Bar No. 24098960
214-855-3000 | 214-580-2641 (f)
CARRINGTON, COLEMAN, SLOMAN &
BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
*Counsel for Plaintiffs*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Bobby H. Schiff and Mark Fisher

### DEFENDANTS
James Ward Jr., Dane D. Koller, and Edwin E. Castillo

**(b)** County of Residence of First Listed Plaintiff: _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Benton County, AR
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Alex More, Jason Katz, Dorlin Armijo, Carrington Coleman, 901 Main St., #5500, Dallas, TX 75202  214-855-3000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**TORTS — PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- [x] 850 Securities/Commodities/Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1125 ("Lanham Act"); 15 U.S.C. § 1117(a)

Brief description of cause:
False advertising to consumers and violation of Texas law for unlawful securities advertisement and sale

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: not applicable    DOCKET NUMBER: _____

DATE: May 17, 2021

SIGNATURE OF ATTORNEY OF RECORD: /s/ Alex More

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____